Opinion
 

 KINGSLEY, Acting P. J.
 

 Plaintiff Simmons sued Wexler for personal injuries. Plaintiff was driving to work at 7:42 a.m. on his Honda motorcycle. He did not have his headlamps on. It was a sunny day, and the motorcycle brakes were in good condition, the weather was clear, and there was no other traffic on the two streets involved.
 

 Debra Harris, a disinterested witness, was driving home in her van when she saw the accident. She saw defendant’s vehicle an instant before it entered the intersection. Defendant’s vehicle slowed down at the stop sign but never came to a complete stop. Plaintiff was traveling within the speed limit.
 

 The California Driver’s Handbook in the section called “For Safety’s Sake” suggests that a motorcycle driver drive with his headlights on, but the law at the time of the accident did not require that a motorcycle driver have the headlights on during daylight hours. Motorcycles manufactured and registered after January 1, 1975, are required to have at least one headlamp which automatically turns on and remains on when the engine was started and running, but there is no suggestion that plaintiff’s motorcycle was manufactured after Januaiy 1, 1975.
 

 I
 

 Defendant’s first objection is to giving the following instruction: “The Court finds that plaintiff Burt Simmons was not guilty of any negligence and hence you will not consider any question as to whether Burt Simmons was negligent or contributed to the accident in question.”
 
 *1011
 
 Appellant claims that, instead, the court should have instructed the jury in the language of BAJI Nos. 3.50, 5.10 and 14.90 as follows:
 

 “Contributory negligence is negligence on the part of a plaintiff which, combining with the negligence of a defendant, contributes as a [proximate] [legal] cause in bringing about the injury.
 

 “Contributory negligence, if any, on the part of the plaintiff does not bar a recovery by the plaintiff against the defendant but the total amount of damages to which the plaintiff would otherwise be entitled shall be reduced in proportion to the amount of negligence attributable to the plaintiff.” (BAJI No. 3.50.)
 

 “The fact that one has the right of way, if such be the fact, does not excuse him from the exercise of ordinary care to avoid an accident.” (BAJI No. 5.10.)
 

 “If you find that plaintiff’s injury was proximately caused by a combination of negligence of [one or more of] the defendants] and contributory negligence of the plaintiff, you will determine the amount of damages to be awarded by you, as follows:
 

 “First: You will determine the total amount of damages to which the plaintiff would be entitled under the court’s instructions if plaintiff had not been contributorily negligent.
 

 “Second: You will determine what proportion or percentage is attributable to the plaintiff of the total combined negligence of the plaintiff and of the defendants] [and of all other persons] whose negligence proximately contributed to the injury.
 

 “Third: You will then reduce the total amount of plaintiff’s damages by the proportion or percentage of negligence attributable to the plaintiff.
 

 “Fourth: The resulting amount, after making such reduction, will be the amount of your verdict.” (BAJI No. 14.90.)
 

 Appellant also claims that it was error to instruct the jury as follows: “The operator of a motorcycle has the same rights and privileges to use our streets as the operator of a car, or any other vehicle. Also, his duties are no different, and no greater than the duties required of the operator of a car or any other vehicle. The operation of a motorcycle during
 
 *1012
 
 daylight hours has no duty to operate his motorcycle with a headlight on.”
 

 Thus, if there is evidence to suggest that plaintiff was contributorily negligent, due to his failure to have his headlamps on or for other reasons, defendant’s complaints about instructions given and omitted are well taken. If, on the other hand, plaintiff was not contributorily negligent, there was no error in instruction.
 

 A fundamental question before this court is whether the trial court should have given instructions on the theory of contributory negligence, due to the fact that plaintiff did not have his motorcycle headlamp on, where the law at the time of the accident did not require the use of a headlight, but where daytime headlight use for motorcycles was recommended in the driver’s handbook. Also, before the court is whether the record contains any other evidence of contributory negligence such that instructions on contributory negligence should have been given.
 

 The question of contributory negligence of a plaintiff is ordinarily one for the determination of the trial court as a trier of fact. It becomes a question of law only when the evidence is of such a character that it will support no other legitimate inference.
 
 (Hubbell
 
 v.
 
 Clink
 
 (1946) 73 Cal.App.2d 295, 300 [166 P.2d 384].) If there is evidence of contributory negligence, even though it is slight as compared to the negligence of the defendant, a refusal to give an instruction on contributory negligence is error and such error is obviously prejudicial.
 
 (Phillips
 
 v.
 
 G. L. Truman Excavation Co.
 
 (1961) 55 Cal.2d 801, 806, 818 [13 Cal.Rptr. 401, 362 P.2d 33].) However, giving an instruction on contributory negligence where there is no evidence to support it is reversible error.
 
 (Burks
 
 v.
 
 Blackman
 
 (1959) 52 Cal.2d 715 [344 P.2d 301].)
 

 Here, there is no showing of contributory negligence. Plaintiff was where he had every right to be and was driving at a proper speed and he otherwise obeyed the law. Plaintiff argues correctly that a motorist, having looked to his right and left, has a right to assume that any vehicle would obey the law, stop at a stop line, and yield the right of way to plaintiff’s car on the highway.
 
 (Guerra
 
 v.
 
 Balestrieri
 
 (1954) 127 Cal.App.2d 511, 515, 516 [274 P.2d 443].) There was no contributoiy negligence in plaintiff’s failure to realize appellant would go through the stop sign.
 

 
 *1013
 
 Defendant argues, however, that there is no actual evidence that plaintiff looked to right and left. First of all, liability may not be based on a driver’s failure to look if the collision is not the proximate result of such failure and if it could not have been avoided even if the driver had looked (as where the other vehicle comes into his path suddenly and without warning). (See
 
 Robbiano
 
 v.
 
 Bovet
 
 (1933) 218 Cal. 589 [24 P.2d 466].) Although a driver’s contributory negligence in failing to see a vehicle ahead of him in time to avoid a collision is normally a question of fact (see
 
 Smyth
 
 v.
 
 Harris & Devine
 
 (1934) 3 Cal.App.2d 194 [38 P.2d 862]) a motorist on a highway protected by stop signs may initially assume that vehicles on intersecting streets will not be driven on the highway into the path of the vehicles on the highway so close as to constitute an immediate hazard.
 
 (Jobe
 
 v.
 
 Harold Livestock Com. Co.
 
 (1952) 113 Cal.App.2d 269, 274 [247 P.2d 951]; Annot. (1965) 3 A.L.R.3d 180.) A person lawfully and carefully using the street has a right to assume that all other persons using the street will also exercise ordinary care and caution, and he is not usually bound to anticipate negligence on their part. (See
 
 Garibaldi
 
 v.
 
 Borchers Bros.
 
 (1957) 48 Cal.2d 283 [309 P.2d 23].) Therefore, lack of direct evidence as to whether plaintiff did or did not look to the right and left would not in and of itself be evidence of contributory negligence, Secondly, plaintiff testified that he had no difficulty seeing in all directions and from this one could draw the inference that he looked to the right and left.
 

 Finally, although evidence showed that defendant never stopped at the stop sign and that she rolled on through it, evidence also showed that she slowed down to about five miles per hour. It is obvious that if a motorcyclist is lawfully driving through an intersection without a stop sign on this part of the roadway, and sees another person approaching the same intersection who is slowing down to about five miles per hour at their stop sign, the motorcyclist driving on the road without the stop sign, would reasonably believe that the other person was slowing down in order to stop at a stop sign.
 

 Defendant’s reliance on
 
 Martin
 
 v.
 
 Bussert
 
 (1971) 292 Minn. 29 [193 N.W.3d 134] is misplaced. That case did not involve a duty to stop at a stop sign or a stop light and that difference is crucial. Obviously, the duties, or the degree of duty is different at an uncontrolled intersection than at an intersection where there is a stop sign.
 

 Defendant suggests that error was committed in refusing to give instructions on contributory negligence relating to plaintiff’s failure to use
 
 *1014
 
 headlights on his motorcycle. We do not agree. Admission that a plaintiff did not have headlights burning at the time of the collision is immaterial where a statute did not require the use of lights. (See
 
 Rhone
 
 v.
 
 Fox
 
 (Tex.Civ.App. 1940) 142 S.W.2d 542.) Drivers should comply with the legal headlight requirements as the law existed
 
 at the time of the accident.
 
 (See
 
 Sawdey
 
 v.
 
 Producers’ Milk Co.
 
 (1930) 107 Cal.App. 467, 475, 476 [290 P. 684]; read Annot. (1971) 40 A.L.R.3d 856.)
 

 However, it is arguable that plaintiff should have had his headlights on anyway, since motorcycles with headlights on are easier to see. But, even if defendant could successfully argue that nonviolation of any headlight statute only goes to whether or not plaintiff was guilty or not of contributory negligence per se, and that plaintiff had a common law duty of care to use headlamps beyond that of the statute, it was still proper for the court below to not instruct on contributory negligence. There is no showing that failure to use the motorcycle headlamp contributed to the accident or was proximately related to it. Contributory negligence is a defense if it is causally connected with the injury. (4 Witkin, Summaiy of Cal. Law (8th ed. 1974) Torts, § 690, p. 2977.) Here, there isn’t the slightest suggestion that lack of a headlight was causally related to the accident. Visibility was good, the weather was clear, streets were dry and there was no other traffic around to distract defendant from seeing plaintiff. Plaintiff was where he had every lawful right to be. The accident was caused by defendant not observing the duty to stop at the stop sign, and there is nothing to suggest that defendant would have chosen to obey the law and stop at the stop sign if plaintiff had used his headlight. Therefore, even if plaintiff were to be held to a duty higher than that in statute, we cannot see how a breach of that duty contributed to the accident.
 

 A Maryland case dealing with a motorcyclist who failed to wear protective headgear presents an interesting analogy to our case. (Read
 
 Rogers
 
 v.
 
 Frush
 
 (1970) 257 Md. 233 [262 A.2d 549, 40 A.L.R.3d 847].) The Maryland court held that the fact that the Legislature several years after the accident enacted a statute requiring the wearing of a helmet by motorcyclists was not a sufficient ground for concluding that as of the time of the accident such a standard of conduct was expected by the general public. Similarly, in the case at bar, plaintiff should not be held to a higher standard of conduct than existed at the time of the accident, simply because the law required motorcycles manufactured after plaintiff’s motorcycle was manufactured, to have the headlights burning all the time the engine was running.
 

 
 *1015
 
 II
 

 Prior to trial, plaintiff offered to settle the action for $42,500. The offer was refused and the judgment ultimately recovered by him was $125,000. Relying on section 998 of the Code of Civil Procedure, he sought in the trial court the allowance of expert witness costs. The request was denied and he has cross-appealed. We see no error.
 

 The language of the section relied on merely states that, in such a situation, the trial court
 
 may,
 
 in its discretion, grant such fees; it does not make the allowance mandatory (see 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 90, p. 3249). We can see no abuse of discretion.
 

 Plaintiff also argues that he entered into an agreement with Dr. Ackerson to pay him for his time, and that such express contracts are enforceable. Even if there was such a special arrangement, and even if the doctor is entitled to a fee pursuant to such contract, it does not follow that those fees are necessarily recoverable pursuant to section 998.
 

 The judgment is affirmed. Plaintiff shall recover his costs on appeal.
 

 Jefferson (Bernard), J., and Alarcon, J., concurred.
 

 A petition for a rehearing was denied August 1, 1979, and the petition of defendant and appellant for a hearing by the Supreme Court was denied September 26, 1979.