[No. C000930. Third Dist. July 28, 1989.]

ERNEST ROBERT MEISSNER et al., Plaintiffs and Appellants.
RICHARD PAULSON et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion shall be published except for parts I-V and VII-IX of the Discussion.

COUNSEL

Clyde Small for Plaintiffs and Appellants.

Victor R. Richardson, Arthur L. Morgan and Halkides & Morgan for Defendants and Appellants.

OPINION

**MARLER, J.**—After a fire on premises leased to Richard Paulson, Ernest Meissner, the landlord, and his insurer, United Pacific/Reliance Insurance Companies (collectively the plaintiffs), sued Paulson for rent owed after the premises had been restored and for damages caused by the fire. Paulson died during the discovery phase of the case. The parties stipulated the Estate of Paulson would be substituted as nominal defendant, but that any judgment would be recovered from Paulson's insurer, Fremont Indemnity Company, the real party in interest (collectively the defendants). Before the case went to the jury the parties further stipulated that Paulson owed Meissner $5,855.87 in rent, eliminating that cause of action from the jury's

consideration. On the remaining issue of liability for the fire, the jury returned a verdict in favor of defendants. Both sides have appealed. Plaintiffs claim (1) the trial court should not have granted defendants' motion for a judgment on the pleadings, which dismissed their intentional tort cause of action, (2) the court should have given requested instructions on res ipsa loquitur, (3) the court made erroneous evidentiary rulings, (4) defense counsel's trial tactics constituted misconduct, (5) the court should have granted plaintiffs a new trial, and (6) defendants' cost bill should have been stricken. Defendants appeal claiming (1) the attorney's fee award to Meissner should be reduced, (2) interest awarded on the rent claim was calculated from the wrong date, and (3) the trial court should have granted defendants' motion for nonsuit. We shall reverse the award of costs to defendants and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Meissner owned a commercial building in Redding. He leased part of the building to Paulson for use as a restaurant. Both Meissner and Paulson carried insurance related to the premises, which they procured through the same agent. Meissner carried insurance on the building, originally in the amount of $361,075. He increased the insurance to $400,000 on April 30, 1980. On August 1, 1980, he increased it again to $425,000, although the insurance company recommended an increase to $440,000. Paulson carried fire loss insurance on his personal property in the restaurant. The initial coverage was $40,000. He increased coverage several times, as he added equipment and furnishings to the restaurant, including an increase to $100,000 on June 4, 1980, and an increase to $250,000 on September 25, 1980.

In the early morning of October 14, 1980, fire broke out in Paulson's restaurant. Fire investigators discovered two separate fires, one in the restaurant on the second floor and a small second fire downstairs in Paulson's office, which destroyed many of his business records. Both the burglar alarm and the sprinkler system had been turned off before the fire. The investigators could not determine whether the building had been broken into that night. They concluded the fire was arson, although the arsonist was never found or identified.

United Pacific paid Meissner's claim for the fire damage and the building was repaired. After repairs were completed, Paulson failed to make several monthly rent payments.

On November 10, 1981, United Pacific and Meissner filed a lawsuit against Paulson. Meissner sued for the damage caused by the fire under two

theories. In the first cause of action, Meissner claimed breach of contract. The second cause of action was labeled "tort"; Meissner claimed Paulson acted "negligently, recklessly and intentionally." Meissner also sought unpaid rent in a separate cause of action. United Pacific brought a subrogation action for the fire damage.

Defendant Paulson and his wife filed a cross-complaint against defendants, alleging Meissner failed to make certain repairs and installations following the fire, engaged in a campaign to harass the Paulsons by these failures, and dumped dirt and gravel in Paulson's parking lot. A demurrer was sustained as to three causes of action, leaving only Meissner's failure to fulfill his contractual obligations outstanding. Defendants pursued discovery on possible offsets to the rent obligation, and finally stipulated they claimed no offsets. The cross-complaint was dismissed with prejudice on September 9, 1985.

Discovery in the case was long and arduous. During this period, on November 11, 1983, Paulson died. In order to induce plaintiffs to limit their recovery to the policy proceeds under Probate Code section 709, Fremont agreed to satisfy fully any judgment against Paulson up to $500,000.[1] This offer was incorporated into a formal stipulation, by which the parties agreed the Estate of Paulson would be substituted as defendant in the action, but real party Fremont would be responsible for any judgment.

Defendants challenged the validity of this stipulation as it applied to Fremont's indemnification for an intentional tort by Paulson. The trial court twice found the stipulation valid with respect to an intentional tort. Defendants then petitioned this court for a writ of mandate directing the trial court to set aside its rulings. The writ was denied. As explained more thoroughly in the discussion below, defendants then moved for a judgment on the pleadings, claiming for the first time indemnification for the intentional tort of arson would violate Civil Code section 2774. The trial court, with a different judge presiding, granted the motion.

Shortly after this ruling, on April 15, 1986, defendants made an offer to plaintiffs under Code of Civil Procedure section 998 to settle the case for $25,001. Plaintiffs did not accept the offer.

The case proceeded to trial. Meissner's attorney presented the claim for rent. The bulk of the trial, on the issue of liability for the fire damage, was handled for plaintiffs by United Pacific's attorney. Plaintiff called as wit-

---

[1] The record does not explain why Fremont agreed to an indemnification up to $500,000 when its liability under the policy was only $250,000 and the damages claimed were even less than this amount.

nesses two firemen who had been involved in investigating the fire. Defense counsel called Glenn Botkin, a fire cause consultant, to testify as to his later investigation of the fire. Much of his testimony was stricken when it became apparent he had not observed the premises until after they had been rebuilt following the fire.

After plaintiffs presented their case-in-chief, defendants moved for a nonsuit. The basis of this motion was that United Pacific could not subrogate to a claim against Paulson because Paulson was Meissner's tenant and indirectly, through rent payments, paid Meissner's insurance premiums. The court reserved its ruling and later allowed plaintiffs to present additional evidence, out of the jury's presence, of the parties' insurance coverage and intentions. The court found this evidence raised questions of fact as to whether the parties intended by their insurance arrangements to preclude Fremont's indemnification of United Pacific. The court denied the motion for nonsuit and then questioned whether this evidence of intention should go to the jury. Defense counsel declined. Therefore, the court found no issue before the jury of the permissibility of Fremont's indemnification.

Just before the case was to go to the jury, the parties stipulated Paulson owed Meissner $5,855.87 in rent. At that point, Meissner's attorney excused himself from further proceedings to attend to other business.

The jury, by special verdict, found Paulson was not negligent.

The court entered judgment for defendants on liability for fire damage and for Meissner on the rent cause of action in accordance with the parties' stipulation. The court reserved the issues of interest, attorney's fees and costs. After several postjudgment motions, which will be discussed below, the court granted Meissner $6,000 in attorney's fees, his costs, and interest on the rent due from one year after filing the original complaint. The court also ruled defendants were entitled to their costs, with a reduction for Botkin's expert witness fees, from United Pacific.

DISCUSSION

I-V*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

* See footnote, *ante*, page 785.

## VI

On April 15, 1986, defendants made a joint offer to plaintiffs pursuant to Code of Civil Procedure section 998 to allow a judgment to be taken against them in the amount of $25,001.[8] The offer was not apportioned between plaintiffs or between causes of action, and was not accepted.

After the trial defendants filed a cost bill, seeking costs of $7,850.09. Plaintiffs then filed a motion to strike defendants' cost bill, in which they asserted defendants were not entitled to costs because their offer to compromise was null and void and not made in good faith. The trial court ruled defendants should receive their costs, relying on both sections 998 and 1032, subdivision (b) of the Code of Civil Procedure.[9]

■ Plaintiffs argue, as they did below, the offer was not valid under section 998. Since the offer was made jointly to Meissner and United Pacific, plaintiffs contend it could not be said either party failed to receive a more favorable judgment. To support this argument they cite *Randles* v. *Lowry* (1970) 4 Cal.App.3d 68 [84 Cal.Rptr. 321] and *Hutchins* v. *Waters* (1975) 51 Cal.App.3d 69 [123 Cal.Rptr. 819]. In *Randles* the defendant made an offer jointly to three related plaintiffs to settle a tort action. The offer was rejected. At trial two plaintiffs recovered; the third did not. The court held the offer, made pursuant to Code of Civil Procedure section 997, the predecessor to section 998, was a nullity for purposes of assessing costs because it was made jointly to all three plaintiffs without designating how it should be divided among them. Because there was no allocation, it was impossible to say any one plaintiff received a less favorable result than he would have under the offer. (*Randles, supra,* at p. 74.) In *Hutchins* the defendant made an offer to two plaintiffs. The offer was apportioned between them but specified that neither party could accept the offer unless the other also agreed to accept. The court construed section 998 strictly in favor of the plaintiffs and held that an offer conditioned upon acceptance by two plaintiffs did not meet the requirements for an offer under section 998. (*Hutchins, supra,* at pp. 73-74.)

---

[8] Code of Civil Procedure section 998 (hereafter section 998) provides in part: "(a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section.

"(b) Not less than 10 days prior to commencement of trial, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. . . .

"(c) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his or her costs and shall pay the defendant's costs from the time of the offer. . . ."

[9] Code of Civil Procedure section 1032, subdivision (b) provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."

The trial court found defendants did not meet their burden of proof to show Meissner received a less favorable result, but did meet that burden with respect to United Pacific. The court distinguished *Randles*. The complaint contained four causes of action, three by Meissner and one by United Pacific. Meissner sued for damage caused by the fire in the amount of $54,227.81, under a breach of contract theory and a tort theory, and for $7,898.86 in rent due and $1,500 in attorney's fees. An amendment to the complaint on January 18, 1985, reduced this rent figure to $5,855.87 and the parties later stipulated to this amount. The fourth cause of action was United Pacific's subrogation claim for fire damage in the amount of $52,433.16. Allocating full recovery to Meissner for the rent, attorney's fees and damage in excess of the insurance payment, a substantial part of the $25,001 offer remained for United Pacific. Therefore, as the trial court noted, although defendants did not apportion the compromise offer, a major portion of it *must* have been intended for United Pacific.

However, neither party could accept without the consent of the other party. The offer inherently necessitated agreement between the parties as to apportionment between them. Although in this case we can say United Pacific received less than it would have under the offer, permitting such application of section 998 would introduce great uncertainty into this area of the law. Plaintiffs would be required to second-guess all joint offers to determine whether a failure to reach agreement with coplaintiffs would cause a risk of section 998 costs against them. We believe the Legislature did not intend to place this burden on offerees. To enforce the purpose of section 998, we find as a matter of law only an offer made to a single plaintiff, without need for allocation or acceptance by other plaintiffs, qualifies as a valid offer under section 998. Accordingly, we shall reverse the award of costs to defendants under section 998. However, only the additional costs recoverable under section 998 by the defendant are affected by the ruling. The trial court also found defendant to be the prevailing party under Code of Civil Procedure section 1032 subdivision (b), and thus entitled to all costs provided by section 998 except for expert witness fees. The expert witness fees portion of the trial court's award of costs totalled but $695 and is the only portion of the cost bill in question here.

VII-IX*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

* See footnote, *ante*, page 785.

## DISPOSITION

We reverse the award of costs to defendants and direct the trial court to reduce the costs allowed defendant by $695 and amend the judgment accordingly. In all other respects the judgment is affirmed. Plaintiff Meissner shall recover his costs on appeal. All other parties shall bear their own costs on appeal.

Puglia, P. J., and Sims, J., concurred.